[Civ. No. 14613. Second Dist., Div. Three. Apr. 19, 1945.]

LOUISE L. KLINE, Respondent, v. M. BARKETT, Appellant.

Gibson, Dunn & Crutcher and Philip C. Sterry for Appellant.

Paul Nourse and Pat A. McCormick for Respondent.

WOOD (Parker), J.—Defendant appeals from a judgment upon a verdict in favor of plaintiff for $18,000 damages for personal injuries sustained by plaintiff in a collision between her automobile and defendant's truck and trailer.

On October 24, 1942, about 7 p. m., plaintiff and her husband left Las Vegas, Nevada, in plaintiff's sedan automobile, intending to go to Los Angeles. The husband drove the automobile and plaintiff sat on the right side of the front seat. The collision occurred about 5 o'clock the next morning in Glendora, California, on Highway 66 approximately 350 feet east of the intersection of that highway and Pasadena Avenue. The highway for several hundred feet east and west of the place of the collision was straight, paved and 54 feet wide. In the center of the highway there were double white lines, and on each side of the highway there were two 10-foot traffic lanes which were separated by a white line. Adjoining each of the outer lanes there was a seven-foot paved shoulder. At the outer edge of the shoulder on the north half of the highway there was a cement curb. The 10-foot lane on the north side of the highway, next to the center, will be referred to as lane 1, and the other 10-foot lane on the north side will be referred to as lane 2.

Defendant's truck and trailer were 53 feet in length. The truck, also known as a truck tractor, had dual wheels in the rear and single wheels in front. The trailer had dual wheels in the rear but no wheels at the front and it was connected with the truck tractor by a swivel or fifth-wheel in the center of the rear of the tractor upon which the front of the trailer platform rested. By such a swivel connection the truck tractor could be turned or set "at an angle to the trailer." The platform or bed of the trailer was flat without side stakes or uprights, was four feet above the ground, 8¾ feet wide, and was made specially to carry two house trailers when loaded lengthwise thereon—one house trailer in front of the other. Two red lights and two reflectors were on the rear end of the trailer. The trailer was empty.

Plaintiff's husband testified that he was driving about 35 miles an hour in lane 2 when he first saw defendant's truck which was then "300 to 400 feet" ahead of him in lane 2; that at that time he observed three or four red lights on the

rear of the truck, but he did not observe whether the truck was moving; that the night was "dark" and he could not see the highway farther than the range of the automobile headlights, which lights were "on" the ordinary driving beam; that when he arrived at a point in lane 2 "50 to 60" feet behind the truck he turned the automobile to his left and "started to go" into lane 1 for the purpose of passing the truck; that he "did not get clear over" into lane 1, but as he was making such attempt to pass the truck the rays of a spotlight on an eastbound automobile which was traveling close to the center line of the highway, but south of it, struck him in the eyes and temporarily blinded him; that the oncoming automobile was then about opposite the front of the truck; that when the light was flashed in his eyes he applied the brakes, "turned back" and "stayed right in" lane 2, and after traveling about 50 feet, at the approximate rate of 35 miles an hour, collided with the rear end of the trailer; that he did not observe the truck or trailer after the light was flashed in his eyes until the collision had occurred; that the right front one-half of the width of the automobile for a distance of approximately three feet from the front end of the automobile was "pinioned" under the left end of the trailer; that the collision stopped the automobile immediately; that immediately after the collision he got out of the automobile from its left side, and the truck driver got out of the cab of the truck, and they had a conversation; that at that time the automobile "was directly in line parallel with the markings on the highway"; that at that time the right side of the truck tractor was within a few inches of and parallel with the north curb (as shown by the map in evidence), and the trailer extended diagonally into the street—the right rear corner of the trailer being about five feet from the north curb, and the left rear corner being about 13¾ feet from the north curb or 6¾ feet into lane 2; that his wife, who was sitting on the right side of the front seat at the time of the collision, was "pinned" under the wreckage of the right front portion of the automobile; that after he had extricated her he laid her on the front seat of the automobile, her head extending outside the left door of the automobile, and he held her head while awaiting the arrival of the ambulance; that her head was bleeding, and a blood spot, about one foot in diameter,

was formed on the pavement at the left side of the automobile while the automobile remained in the position it was in when the collision occurred; and that the center of that blood spot was about 15 feet from the north curb. On the way from Las Vegas plaintiff and her husband stopped only at Baker, Barstow and Victorville.

Plaintiff's son, who was called as a witness by her, testified that he went to the scene of the collision the next morning with plaintiff's husband (his stepfather); that the blood spot was about 15 feet from the north curb and about two feet north of the white line which separated lanes 1 and 2; that there were two skid marks just east of the blood spot—one being four feet and the other two feet in length; that the right side of the hood of the automobile was caved in, the cowl was pushed back, and the foot boards on the inside were pushed back against the front seat; that the first place along the north edge of the highway, east of the point of the collision, where there was no curbing, was at a drive-in restaurant about 1,000 feet away and at that place there was no curbing for a distance of approximately 150 feet.

Plaintiff was asleep at the time of the collision and did not testify concerning it.

The truck driver was in the armed forces at the time of the trial and did not testify.

The Chief of Police of Glendora, called as a witness by defendant, testified that he went to the scene of the collision about 5:30 a. m.; that the right wheels of the truck and trailer were "up against" the north curb; that he did not see any blood spot or any skid mark on the highway; that the automobile was parallel with the center white line on the highway and was not "angled into the truck"; and that it was "open country" at the place of collision.

Another police officer, called as a witness by defendant, testified that he went alone to the scene of the collision about 5:15 a. m.; that the right wheels of the truck and trailer were parallel with, and within one foot of, the north curb; that plaintiff was lying on the front seat of the automobile—her head extending outside the left front door, and plaintiff's husband was holding her head; that plaintiff asked her husband what had happened, and the husband said, " 'I don't know whether I went to sleep or what happened' "; that he (this witness) assisted the other officer in making notes con-

cerning the collision, but they did not include therein a note of said alleged statement by the husband, and he (this witness) did not tell the other officer that he had heard such statement; that he did not observe whether plaintiff's head was bleeding; and that he placed flares on the highway. The husband, upon being recalled, testified that he did not make said statement.

Plaintiff's theory of the case was that the defendant was negligent in that the truck and trailer were parked unlawfully on the highway.

█ Defendant (appellant) contends that the evidence was insufficient to justify the implied finding of the jury that defendant was guilty of negligence. He argues that no one testified that the truck and trailer were stopped at the time of the collision, and that there was no evidence from which it could be inferred that they were stopped at that time. It is true the driver of the automobile, who was the only eyewitness to the collision testifying at the trial, did not testify that he observed, before the collision, that the truck and trailer were stopped. There was evidence, however, that the automobile stopped *immediately* when the impact occurred and that when it so stopped it was "pinioned" or wedged under the trailer. The automobile being so fastened to the trailer, it is reasonable to conclude that it would have been pulled forward by the truck if the truck had been moving. If the automobile stopped immediately, of course it was not pulled forward by the truck. Viewing the evidence in the light most favorable to the respondent, as a reviewing court is required to do, it should be concluded that the jury herein interpreted the word "immediately," as used in the testimony, to mean that the automobile did not go forward at all after it became fastened to the trailer. From that evidence, and from the evidence that after the collision the right wheels of the truck tractor were "up against" and parallel with the curb and the trailer was in a diagonal position, and from the evidence as to the size and kind of vehicles involved, the jury could have inferred that the truck and trailer were stopped when the collision occurred. █ Furthermore, the issue as to whether defendant's vehicle was parked was settled by the pleadings. The complaint alleged in part that Kenneth Francis Dawson, the driver of the truck and trailer (admittedly the agent of defendant), "did so negligently, recklessly and

carelessly drive, operate, control and park said described truck and trailer as to cause the same to collide with" plaintiff's automobile. The answer stated in part that defendant "denies that said collision was caused or occasioned by any fault, carelessness or negligence of this defendant or of its servant, agent or employee; denies that Kenneth Francis Dawson so or at all *negligently* or recklessly or carelessly drove or operated or controlled, or *parked* said truck and trailer as to cause the same to collide with said automobile." (Italics added.) In a separate defense of contributory negligence, the answer alleged that the "truck and trailer owned by this defendant and being operated by one, Kenneth Francis Dawson, *was parked* on Highway 66 in the City of Glendora . . . with all due care and caution." (Italics added.) It therefore appears that the part of the answer first above referred to was merely a denial that the truck and trailer were *negligently* parked, and was not a denial that they were *parked*. That part of the answer did not put in issue the question as to whether the vehicle was parked, but only put in issue the question as to whether it was negligently, recklessly or carelessly parked. The separate defense, above referred to, alleged that the vehicle was parked. ▋ A defendant is entitled to allege inconsistent defenses, and an admission as to a certain matter in one defense will not preclude him from relying on a denial thereof in another defense; however, in this instance the alleged defenses were not inconsistent upon the issue of parking. In the first defense, the allegation of the complaint that the vehicle was parked was admitted by failing to deny it; and in the second or separate defense, the defendant expressly alleged that the vehicle was parked on the highway. It appears that the allegations in the answer as to the issue of parking were not made through inadvertence or mistake. During the trial plaintiff's husband testified that the truck was stopped at the time the collision occurred, but when it appeared further from his testimony that he had not observed, before the collision, whether the truck was stopped, his testimony that it was stopped at the time of the collision was excluded upon motion of the defendant. Thereupon, counsel for plaintiff said that the pleadings admitted the vehicle was parked; and counsel for defendant said, "You have charged us with *negligently* operating, driving, *parking, stopping,* or a few other things, all of which is denied." (Italics added.) Counsel for plaintiff then stated that the defendant had alleged in the

affirmative defense that the vehicle was parked; and the court then said, in referring to counsel for plaintiff, "[Y]our observation relative to the pleadings is well taken." Plaintiff's counsel then asked defendant's counsel if he was "going to take the position that the truck was or was not stopped"; and defendant's counsel replied, "I am going to take the position that you cannot prove whether it was stopped or not." Plaintiff's counsel said, "That raises the point, is the defendant going to stand upon his verified pleading or not?" Defendant's counsel said, "We have two answers in there, one is that we were not negligent, that is the first thing you have got to prove." Plaintiff's counsel said, "We will take care of that, but I want an understanding as to whether Mr. Sterry wants to withdraw his verified pleading under oath that this truck was parked at the time of the accident." Counsel for defendant replied, "No, I do not wish to withdraw the pleading." It therefore appears that the defendant has not been taken by surprise concerning the condition of the pleadings.

 The record is sufficient legally to establish that the truck and trailer were parked on the highway.

 A further question is whether the truck and trailer were parked unlawfully. There was no evidence as to whether the scene of the collision was within a business or residence district, except the maps and photograph of the scene, which were received as exhibits, and from those exhibits it appears that the place of the collision was not within a business or residence district. It is therefore conclusively presumed that the scene was outside a business or residence district. (Veh. Code, § 758.) Section 582 of the Vehicle Code provides: "Upon any highway outside of a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of the highway when it is practicable to stop, park or so leave such vehicle off such part or portion of said highway." The evidence shows, in the light most favorable to respondent, that the right rear corner of the trailer was five feet from the curb and the left rear corner of the trailer was 13¾ feet from the curb (the trailer being 8¾ feet wide), that is, the left rear corner of the trailer projected 6¾ feet into lane 2, leaving 3¼ feet of lane 2 open to travel. No evidence was offered to show that it was not practicable to park off the highway. The burden was upon

defendant to prove that it was not practicable to park off the highway, and plaintiff established a prima facie case of violation of said section 582 by proof that the vehicle was parked on the paved portion of the highway. (*Thomson* v. *Bayless* (1944), 24 Cal.2d 543, 546 [150 P.2d 413].) ▉ If the truck was not disabled the question as to whether it was practicable to park it off the highway required "a consideration not only of the physical conditions immediately to the right but also of any other possible parking spaces to which the vehicle might reasonably be taken, no matter in what direction." (*Thomson* v. *Bayless, supra,* p. 547.) In that case it did not appear how far along the highway the curb extended, but it did appear that there was an intersection about 600 feet from the parked truck and a service station and restaurant about 375 feet from it, and it was held therein that it was not impracticable to park off the highway. ▉ In the present case there was a drive-in restaurant about 1,000 feet east of the parked truck and at that place there was no curb. The truck driver had traveled that highway in a truck many times. The evidence was sufficient legally to support the implied finding of the jury that defendant's vehicle was parked unlawfully.

▉ Defendant contends further that if it be assumed that defendant was guilty of negligence in parking the trailer illegally upon the highway, such negligence was not a proximate cause of the collision. He argues that the alleged parking of the trailer was a condition of the collision but not a cause of it; that the proximate causes of the collision were the flashing of the spotlight into the eyes of the driver of plaintiff's automobile, and his act in turning the automobile back into lane 2 from lane 1; that there was a space of 13 feet, at least, between the center of the highway and the left rear corner of the trailer, and if the automobile, which was 5½ feet wide, had continued to travel in lane 1, after having left lane 2, the accident could not have occurred; and that the act of flashing the spotlight into the eyes of the driver of plaintiff's automobile was an intervening independent cause of the collision which could not reasonably have been anticipated by the truck driver. The defendant had parked the truck and trailer in violation of the statute and in such a manner that all the seven-foot paved shoulder and practically all of lane 2 of the highway were blocked. His violation of the statute and his negligence did not cease when he parked his vehicle in

such manner, but such parking was an act of continuing negligence. (See *Inai* v. *Ede,* 42 Cal.App.2d 521, 524 [109 P.2d 400].) It is true, as appellant argues, that if the driver of plaintiff's automobile had not been blinded by the light from the spotlight he might have avoided the collision, but that does not render the defendant's negligence any less continuing and does not turn the question as to whether defendant's negligence was a proximate cause of the collision from one of fact into one of law. In the case of *Inai* v. *Ede, supra,* defendant's parked automobile obstructed 3½ feet of the highway, and plaintiffs, pedestrians, were required thereby to walk on the traveled part of the highway and were injured when another automobile skidded on snow and ice and struck defendant's automobile, which then struck plaintiffs. The court said therein (p. 526) : ''Can a court say *as a matter of law* that the negligence . . . in parking his car in such a manner . . . did not in any sense contribute proximately to plaintiff's injuries ? The question of causation is one of fact depending upon the circumstances of each particular case and is ordinarily for the jury to determine. . . .'' Appellant's argument that a proximate cause of the collision was the act of the driver in turning back into lane 2, assumes it be a fact that he had left lane 2. The evidence in the light most favorable to respondent was that he started into lane 1 but did not get entirely into it, and that after the collision the automobile was parallel with the lines on the pavement.

Whether defendant should have anticipated that a driver of an automobile approaching from his rear might be blinded by lights of an automobile approaching from the opposite direction—either by its spotlight or headlights—with the result that the driver approaching from the rear would be unable to see the trailer which was obstructing the highway was not a question of law. The evidence does not show that the light was wilfully or maliciously flashed into the eyes of the driver, and such flashing of the light might have been the result of a defect in the mechanism of the light. Many automobiles are equipped with spotlights, and many drivers negligently fail to dim headlights when meeting another automobile. It is not unreasonable to conclude that one should anticipate that the lights of an automobile might temporarily blind the driver of another automobile approaching from the opposite direction. Defendant having been negligent in parking

his truck was not entitled to assume that others using the highway would not be negligent, and it was a question of fact as to whether he should have anticipated that some person might drive with lights in such condition that another driver might be blinded thereby and collide with his illegally parked vehicle.

 Whether the negligence of the driver of the approaching automobile, with the spotlight on it, was the sole proximate cause of the collision, or whether the negligence of that driver and the negligence of defendant in parking his truck and trailer were concurring causes were questions of fact for the jury. In the case of *Lacy* v. *Pacific Gas & Electric Co.*, 220 Cal. 97 [29 P.2d 781], it was said at page 101: "When, as here, it is claimed that an injury was caused both by the continuing negligent act of one defendant and the independent concurring negligent act of a third person, many facts are to be considered in determining the proximate cause. . . . If the jury believed the evidence so introduced by the plaintiff, and from its verdict we must assume it did, this court may not say *as a matter of law* that the issue of proximate cause was not proved." (Italics added.)

The case of *Mounts* v. *Tzugares*, 9 Cal.App.2d 327 [49 P.2d 883], upon which appellant relies strongly, is distinguishable from the present case in that there was no collision with the parked truck, and the automobile which struck plaintiff's automobile had been driven on the wrong side of the highway in passing the truck, when there was a space of 14½ feet on the right side of the highway between the truck and the center of the highway in which the automobile could have been driven. The case of *McMillan* v. *Thompson*, 140 Cal.App. 437 [35 P.2d 419], upon which appellant also relies, is distinguishable from the present case. In that case an automobile, traveling in the direction in which the parked truck was headed and passing the truck by going on the left (wrong) side of the highway, was struck in the rear by another automobile, going the same direction, which was also on the wrong side of the highway, and the front automobile then struck the parked truck. The court held therein that the truck was not unlawfully parked, but stated, that if it be assumed that the truck driver was negligent in parking, it is not "to be expected that a driver will cross to the left half of a highway when the way is not clear, and then crash into a car ahead

which is not stopped, but is moving in the same direction as himself.''

Another contention of appellant is that plaintiff's husband was guilty of contributory negligence as a matter of law. There was no direct evidence of unreasonable speed on his part, and it cannot be concluded as a matter of law that the damage to plaintiff's automobile was such as would not have resulted to such an automobile, traveling at a reasonable speed, when it collided with a standing truck and trailer of the size described herein. Appellant asserts that the husband was negligent because he proceeded while he was blinded by the light. He was not blinded until he was 50 or 60 feet from the point of collision, when he was suddenly confronted with danger, and from that time until the collision occurred, a period of approximately one second, he was acting in an emergency. It was a question of fact as to whether he should have stopped the automobile within that distance, and as to whether he exercised the care that a reasonably prudent person would have exercised in the same situation. Negligence on the part of plaintiff's husband would have been imputable to her, but it was a question of fact as to whether he was negligent.

A further contention of appellant is that the court erred prejudicially in giving an instruction (of its own motion) which stated in part: ''Contributory negligence is negligence *on the part of a person injured,* which, cooperating . . . with the negligence of another, helps in . . . causing the injury. . . .'' (Italics added.) His argument is that it was not contended that plaintiff, who was asleep at the time of the collision, was personally guilty of any negligence, and the jury must have concluded, in the light of a further instruction that the burden of establishing contributory negligence was upon defendant, that the defendant was required to prove that plaintiff was personally guilty of contributory negligence. Immediately following the first instruction above mentioned the court gave an instruction which was in part: ''By contributory negligence as used in these instructions is meant the want of ordinary care or caution upon the part of plaintiff's husband. . . .'' Immediately following that instruction the jury was instructed that it could not ''compare the negligence of the defendant, if any, with the negligence of plaintiff's husband, for it does not matter whether one was

more negligent than the other. . . .'' Later in the instructions the court stated that if plaintiff's husband conducted himself. in violation of any of certain sections of the Vehicle Code which had been read to the jury that such conduct constituted negligence as a matter of law. Further in the instructions the jury was instructed that if it found that plaintiff's husband was negligent, and that negligence contributed in any degree as a proximate cause of the accident the verdict must be for the defendant. Although the instruction, first above referred to, was in conflict with other instructions, as above noted, it was not prejudicially erroneous. It clearly appeared from the evidence, as well as from the instructions, that defendants were relying upon the alleged negligence of the husband and the jury no doubt understood that fact.

Appellant contends further that the jury was not advised that if defendant's negligence was a remote cause of the accident plaintiff could not recover. The court gave the following instruction: ''There is what is known in the law as the Doctrine of Intervening Cause. By this is meant an act performed by some party not under the control of either of the parties to an action, which comes later in point of time than an original act of negligence and which proximately causes the injury complained of. Thus, in this case, if you should find from the evidence that the defendant was guilty of negligence in parking the truck and trailer, still, if you find that subsequent to the parking of said truck and trailer, a third party, over whom the defendant had no control, committed an act of negligence, ~~which proximately caused~~ and this third party's negligence proximately caused the collision between the automobile in which plaintiff was riding and said truck and trailer, and that such act of said third party was one not to be reasonably anticipated by the defendant as likely to occur and follow through from his act in parking said truck, then ~~I instruct you that~~ the original negligence, if any, of the defendant in parking said truck and trailer was a remote rather than a proximate cause of the injuries sustained by the said plaintiff, ~~and no recovery can be had by plaintiff for such injuries.~~'' (Portions crossed out were deleted.) Appellant asserts that the instruction as given was a correct statement of the law but it should not have been modified and, as modified, it did not go far enough in that it did not advise the jury that under the circumstances therein stated the plaintiff could not recover. The instruction, prior

to the modification as above shown, was a formula instruction and it was not error to omit from it the part shown in the modification. In another instruction the court correctly defined proximate cause. In another instruction the court stated that a violation of law was of no consequence unless it was a proximate cause of an injury. In another instruction it was stated that when the negligent acts of two or more persons contribute concurrently and as a proximate cause, each of such persons is liable in the absence of contributory negligence. In stating the issues to be determined, a further instruction was in substance that if the defendant was negligent and that negligence was "not a proximate cause of any injury to the plaintiff" the plaintiff was not entitled to recover. When the instructions are considered as a whole it appears that the jury was adequately instructed concerning proximate and remote causes. Appellant's further contention that the court erred in refusing to give another instruction, requested by him, which was in substance the same as the first instruction discussed in this paragraph, cannot be sustained.

Appellant contends also that the court erred in refusing to give two other instructions requested by him. One of them was that if the truck and trailer "were parked parallel with the curbing and with the right wheels within eighteen inches of said curbing," then defendant was not guilty of negligence. The other was that if the truck and trailer were "parked parallel with the curbing and with the right wheels thereof within eighteen inches of said curbing, and . . . a portion of the truck and trailer so parked extended upon the paved portion of the highway, and that under the circumstances as disclosed by the evidence it was not practical to park said truck and trailer off such . . . portion of said highway, the . . . defendant in so parking . . . was not guilty of negligence." Those requested instructions were based principally on the provisions of section 588 of the Vehicle Code. Of its own motion the court gave an instruction that section 588 of the Vehicle Code provided in part that "no person shall park or leave standing any vehicle at the curb or edge of a State highway unless both right wheels of the vehicle are within eighteen inches of the curb or edge of the highway." This instruction was in substance the same as the first instruction, referred to in this paragraph, which was requested by defendant; and it included the provision relative to park-

ing within 18 inches of the curb which was in the other instruction requested by defendant. Since it is conclusively presumed, as hereinabove stated, that the collision did not occur within a business or residence district, the appellant's duties as to parking his vehicle were governed by section 582 of the Vehicle Code and not by section 588, which related to parking within 18 inches of the curb. The court properly gave an instruction embodying the provisions of said section 582, as quoted previously herein. The defendant was negligent, according to the provisions of that section, if he parked on the highway at all at the place of collision under the circumstances here, irrespective of whether he parked the right wheels of his vehicle within 18 inches of the curb. The instruction as to said section 588 was erroneous but was not prejudicial for the reason it was more favorable to defendant than a correct statement of the law under said section 582.

The evidence was sufficient legally to support the judgment, and the jury was instructed adequately.

The judgment is affirmed.

Desmond, P. J., and Shinn, J., concurred.

A petition for a rehearing was denied May 18, 1945, and appellant's petition for a hearing by the Supreme Court was denied June 14, 1945.