261 F.2d 15
 Glenn KNUDSON, Stanley M. Price, Travelers Insurance Company and St. Paul Mercury Insurance Company, Appellants,
v.
I. L. BOREN, d/b/a Rio Pecos Oil Company, and Jose Larranaga, Appellees.
 No. 5818.
 United States Court of Appeals Tenth Circuit.
 October 28, 1958.
 
 Charles B. Larrabee, Albuquerque, N. M. (Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., were with him on the brief), for appellants.
 George T. Harris, Jr., Albuquerque, N. M. (J. R. Modrall, of Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, N. M., was with him on the brief), for appellees.
 Before MURRAH, PICKETT and BREITENSTEIN, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 Glenn Knudson, Mary Knudson and Stanley M. Price brought this action to recover damages for personal injuries resulting from a collision on a New Mexico highway between the automobile in which they were riding and a pickup truck owned by the defendant Boren and driven by his employee, the defendant Larranaga. The defendants denied any negligence on the part of Larranaga and also pleaded contributory negligence. Boren counterclaimed for damages to his truck, and Larranaga for personal injuries. The case was tried to the court without a jury, which denied recovery to all parties except Mrs. Knudson. Only the plaintiffs Glenn Knudson and Price appeal. The questions presented are whether the court's findings of fact and conclusions of law support the judgment; whether the negligence of Glenn Knudson, the driver of the car, can be imputed to the plaintiff Price; and whether the finding that there was negligence on the part of Knudson was supported by substantial evidence or was contrary to the clear weight of the evidence.
 
 
 2
 The material facts are these: Price and Glenn Knudson were employees of Sperry Rand Corporation in Los Angeles, California. At about three o'clock in the afternoon of March 7, 1957 they left Los Angeles in Price's car for the purpose of traveling to St. Paul, Minnesota, where they had been assigned for training in a company school. Mrs. Knudson accompanied them but intended to go only as far as Iowa. The party, with Price driving the entire distance, arrived at Phoenix, Arizona about midnight. They left Phoenix between midnight and one o'clock with Knudson driving until he was relieved by Price at about four o'clock. They left Socorro, New Mexico at six o'clock in the morning with Price driving. Near eight o'clock Price, feeling tired, awakened Knudson and asked him to drive.[1] Knudson testified that during the night, when he was not driving, he was able to sleep about three hours. Knudson continued to drive until the accident occurred shortly after nine o'clock, at which time Price and Mrs. Knudson were asleep in the back seat of the automobile. Neither had any recollection of the events surrounding the accident except those which occurred after regaining consciousness a considerable time later. Knudson was seriously injured and regained consciousness about the same time as the others did and also remembered only what happened thereafter. Although Knudson was not treated for concussion or other head injury, he could not remember anything about the collision or what occurred a short time before.
 
 
 3
 Just prior to the accident, the defendant's pickup truck was being driven in a westwardly direction, some distance behind a mail truck, at a speed of 20 to 30 miles per hour. The driver of the mail truck testified that he was preparing to make a lefthand turn onto a country road when he observed plaintiff's automobile approaching from the west at a high rate of speed and weaving back and forth on the highway. He brought his truck to a stop on the north side of the road and, after the oncoming car passed, he turned to watch it. He said it continued to weave from the south edge to the center line of the highway and struck defendant's truck while it was traveling in the westbound lane of traffic, approximately 100 yards to the east. Larranaga's testimony was to the same effect.[2]
 
 
 4
 When the New Mexico highway patrolmen investigated the accident, they found plaintiff's car off the road on the south side, facing west. Defendant's truck was on the highway in the westbound lane of traffic, facing south. At the time of the investigation no skid marks were visible which would indicate that the driver of plaintiff's car had applied its brakes. There was a gouge mark on the pavement in the eastbound lane of traffic which apparently was made by plaintiff's car after the left front wheel was torn off. Later in the afternoon, when one of the highway patrolmen was driving past the scene of the accident, he noticed that there were visible some skid marks which proceeded to the point where the two vehicles came together. Photographs were taken later which show a rather faint tire track to the south of the highway center line, leading to the point of the collision, and then swerving abruptly to the right, as plaintiff's car did. This faint track was said to have been made by the left wheels of plaintiff's automobile. These marks were in a straight line for over 80 feet, and ran slightly toward the center of the highway to the point where they suddenly turned to the right. The photographer testified that south of this track was another paralleling "thin line". An expert on the reconstruction of traffic accidents testified without objection, that from his examination of the damage to the two vehicles, together with the tire marks, cuts in the pavement, and debris, the collision occurred in the eastbound lane of traffic. He also explained that under certain light conditions skid marks of this kind are not visible. The court apparently accepted this version, as it denied recovery to the defendants on their counterclaims. The court also found that the driver of plaintiff's car was negligent in that he "just prior to the accident in question, did not have his vehicle under proper control", and that he "was not maintaining a proper lookout for traffic upon the highway". The defense of contributory negligence was based upon the failure of the driver of Price's car to maintain a proper lookout and to keep the vehicle under proper control. These findings, if sustained by substantial evidence, are sufficiently comprehensive and pertinent to the issues of the case to sustain the conclusion that the driver of plaintiff's car was guilty of contributory negligence, which would bar recovery. Trentman v. City and County of Denver, Colo., 10 Cir., 236 F. 2d 951, certiorari denied 352 U.S. 943, 77 S.Ct. 265, 1 L.Ed.2d 239; Weber v. McKee, 5 Cir., 215 F.2d 447; Summerbell v. Elgin Nat. Watch Co., 94 U.S.App.D.C. 220, 215 F.2d 323; Norwich Union Indemnity Co. v. Haas, 7 Cir., 179 F.2d 827.
 
 
 5
 We cannot agree with plaintiffs' contention that the only reasonable inference to be drawn from all the evidence is that plaintiff's automobile was traveling in the proper lane of traffic and that its driver was without fault. Findings of fact are not to be set aside unless clearly erroneous and with due regard being given to the opportunity of the trial court to judge the credibility of witnesses. Fed.Rules of Civil Proc., 52 (a), 28 U.S.C.A.; Heldenbrand v. Stevenson, 10 Cir., 249 F.2d 424; Levelle v. Powers, 10 Cir., 248 F.2d 774; Fuller v. C. M. & W. Drilling Co. Inc., 10 Cir., 243 F.2d 862; Wunderlich Contracting Co. v. United States, 10 Cir., 240 F.2d 201, certiorari denied 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859; Sowder v. Waray Oil Corp., 10 Cir., 231 F.2d 9; Yokley v. Santa Fe Trail Transp. Co., 10 Cir., 227 F.2d 534.
 
 
 6
 Accepting plaintiffs' version as to where the two vehicles came together, it is quite clear that Knudson's view of the highway was unobstructed and that defendant's truck was visible on the highway for a long distance. The driver of an automobile on the highway owes a duty to take notice of the road and to know what is on it. He is chargeable with knowledge of objects on the highway which are in plain view, and is required to operate his vehicle at such speed and under such control as to be able to avoid objects within the range of his vision. 5A Am.Jur., Automobiles and Highway Traffic, § 265. Assuming that Knudson set the brakes as claimed,[3] the automobile was then too close to the truck, and not under such control as to avoid the collision. All the circumstances, we think, justify the trial court's comment that just prior to the accident all three occupants of plaintiffs' car were asleep and the driver was not maintaining a proper lookout. A person traveling in his proper lane of traffic is not free from contributory negligence as a matter of law. The driver still is required to keep a proper lookout, and as the New Mexico Supreme Court said in Olguin v. Thygesen, 47 N.M. 377, 143 P. 2d 585, 592:
 
 
 7
 "* * * The circumstances of each case must determine the degree of alertness required of a driver in keeping a lookout for road hazards; and, usually, as here, it becomes a question for jury."
 
 
 8
 During the trial of the case the evidence developed that the trip was being made in Price's car for the common purpose and interest of Price and Knudson. It appears that it was understood that they would drive continuously, alternating as necessity required. The court found that at the time of the accident the plaintiffs Glenn Knudson and Price were engaged in a joint enterprise, or joint venture, and that at all material times Knudson was the agent of Price, and concluded that the negligence of Knudson should be imputed to Price. The plaintiffs contend that this is an affirmative defense which the defendants were required to plead. The New Mexico courts have announced that to be the rule in New Mexico. LeDoux v. Martinez, 57 N.M. 86, 254 P.2d 685. The proof of the purpose and the circumstances under which the trip was being made was furnished by the plaintiffs, without objection, and was properly considered by the trial court. Fed.Rules of Civil Proc. 15(b), provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings. See Campagna v. Market Street Ry. Co., 24 Cal.2d 304, 149 P.2d 281, which is cited with approval in the LeDoux case. The rule also provides that amendments to pleadings as are necessary to cause them to conform to the evidence may be made even after judgment. In Underwriters Salvage Co. of N. Y. v. Davis & Shaw Furniture Co., 10 Cir., 198 F.2d 450, 453, we said:
 
 
 9
 "* * * Under Rule 15(b), * * * a liberal provision is made for amendments to conform the pleadings to the evidence and in such cases it is the duty of the court to consider issues raised by evidence received without objection even though no formal application is made to amend."
 
 
 10
 Ordinarily the court is not limited to theories of counsel, but has the duty to determine the issues which are presented by the evidence properly before it.
 
 
 11
 The authorities are in general accord that a person riding as an occupant in his own auto, which is being used for a purpose in common with the driver, is presumed to have the right to control the driver and direct the movements of the vehicle, and the negligence of the driver is imputed to the owner. 38 Am.Jur., Negligence, § 249. The acceptance of this rule was indicated by the Supreme Court of New Mexico in Silva v. Waldie, 42 N.M. 514, 82 P.2d 282, 286, where it was said:
 
 
 12
 "If two or more persons unite in a joint prosecution of a common purpose, under such circumstances that each has authority to control the means employed to execute such purpose, the negligence of one is chargeable to the other; and this applies if they use an automobile as a conveyance for their joint purpose."
 
 
 13
 See also Hinkle v. Union Transfer Co., 10 Cir., 229 F.2d 403; Anno. 85 A.L.R. 630; Anno. 62 A.L.R. 440. We conclude that the evidence is sufficient to sustain a finding that the trip was being made for the common purpose of both Glenn Knudson and Price and that the negligence of Knudson while driving was imputed to Price, even though he were asleep.
 
 
 14
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Price testified that there was no specific arrangement as to who would drive on the trip, but one was to drive until tired, then the other would take over
 
 
 [2]
 Larranaga testified that plaintiff's car was traveling at a speed of 60 to 70 miles per hour and did not slow down before the collision
 
 
 [3]
 There was evidence that plaintiff's car had good brakes and the speed was not diminished prior to striking the truck